FILED
SEP 30 2011
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: Deputy Clerk

ENTERED
SEP 30 2011
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: Deputy Clerk

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re: | Case No. 2:10-bk-52240-PC |
| MARQUITA HELEN McCLAREN, | Adv. No. 2:11-ap-01717-PC |
| Debtor. | Chapter 7 |
| GMAC n.k.a. ALLY FINANCIAL, INC., | |
| Plaintiff, | **MEMORANDUM DECISION** |
| v. | |
| MARQUITA HELEN McCLAREN, | |
| Defendant. | |

By motion filed pursuant to F.R.Civ.P. 60(b)(1),[1] Plaintiff, GMAC n.k.a. Ally Financial, Inc. ("GMAC") seeks relief from an Order of Dismissal ("Order") entered in the above referenced adversary proceeding on August 25, 2011. For the reasons set forth in this Memorandum Decision, the motion is denied.

## I. STATEMENT OF FACTS

On October 1, 2010, Marquita Helen McClaren ("Debtor") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. The deadline to file a complaint objecting to the Debtor's discharge or the nondischargeability of a particular debt was January 4, 2011. On November 5, 2010, Debtor attended a meeting of creditors which thereafter was concluded by the

---

[1] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005). "Rule" references are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable certain Federal Rules of Civil Procedure ("F.R.Civ.P."). "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California.

trustee. On the last day within which to file a complaint under § 523, Debtor and GMAC stipulated to an extension of the deadline for GMAC to file a complaint to determine the nondischargeability of a debt from January 4, 2011 to March 4, 2011. On January 6, 2011, the trustee filed a Chapter 7 Trustee's Report of No Distribution. On January 21, 2011, Debtor filed a certificate reflecting completion of the course in personal financial management required for discharge. Debtor received a discharge on February 3, 2011, and the case was closed on February 14, 2011.

On March 4, 2011, GMAC filed a complaint seeking a judgment that Debtor's debt to GMAC is nondischargeable under § 523(a)(2) and § 523(a)(6). The complaint alleged, in pertinent part, that (1) Debtor purchased a 2009 GMC Yukon from Moreno Valley Pontiac of Moreno Valley, California, for the sum of $44,667.37 pursuant to a Retail Installment Contract between the parties; (2) after purchasing the vehicle, Debtor turned over possession of the vehicle to a third party who was not on the contract; (3) Debtor did not make the payments required by the contract; (4) GMAC, as assignee of the contract, was unaware that Debtor was ostensibly purchasing the vehicle for a third party and did not consent to the arrangement; (5) GMAC obtained a default judgment in state court shortly before the Debtor's bankruptcy for the balance due under the contract and for possession of the vehicle; and (6) Debtor made material false representations and omissions to GMAC, as assignee of the contract, to secure the loan, and intentionally, willfully and maliciously converted GMAC's interest in the vehicle by transferring it to a third party without GMAC's knowledge or consent. On April 4, 2011, Debtor was served with a summons together with a copy of the complaint. The deadline to file an answer or other response to the complaint was April 29, 2011. Debtor did not respond nor did GMAC seek entry of a default pursuant to F.R.Civ.P. 55(a) due to the failure to respond.

On May 24, 2011, the court held a status conference in this adversary proceeding.

1  GMAC did not timely file a status report prior to the status conference.[2] GMAC's counsel

2  appeared by telephone at the status conference, at which time the court and counsel had the

3  following exchange:

> COURT: It looks like an answer was due on April 29th. I have not received a request for entry of default or a motion for default judgment.
>
> COUNSEL: Ah yes, your honor, and we did file a status conference statement, but it was yesterday so I assume you haven't seen it. Ah, there was some confusion over whether or not Ms. McClaren would be defended by her attorney in the underlying case or not who we have worked with. Ah, in this situation its a case where Ms. McClaren, well we allege that she purchased a vehicle using her credit, but immediately turned it over to a third party. Ah, however we've been withholding moving the case forward cause if we find the vehicle we will likely dismiss the case and we've been working in good faith to try to do that. So, that's kind of why we haven't done anything. We would request a little more time to keep on going down that path, if possible.
>
> COURT: I will continue the matter for you to file a request for entry of default and a motion for default judgment.
>
> COUNSEL: Ah, I'm sorry, so do we . . .
>
> COURT: I am not going to simply continue the matter indefinitely . . .
>
> COUNSEL: Okay.
>
> COURT: The complaint was filed on March 4th. Summons has been properly served. There's been no response. I did not receive the status conference statement, by the way. But normally I expect the request for entry of default to be made prior to the status conference if no answer has been filed. Here, an answer was due on April 29th. We're now at the end of May and there is no activity in the case. So, I will give you 60 days to seek entry of default and once that's done, and the matter has yet to be settled, to file a motion for default judgment.
>
> COUNSEL: Understood.
>
> COURT: August 23rd?
>
> COUNSEL: August 23rd, at 9:30 again?
>
> COURT: Yes.
>
> COUNSEL: Thank you, your honor. We'll let, I'll let all the parties know.

---

[2] LBR 7016-1(a)(2) requires that a status report be filed not later than 14 days prior to the date of each status conference. GMAC filed its status report on May 23, 2011 – the afternoon before the status conference. The court did not have GMAC's status report at the time of the status conference.

On August 23, 2011, the court held a continued status conference in this adversary proceeding. GMAC failed to file a status report with the court 14 days prior to the continued status conference as required by LBR 7016-1(a)(2), and failed to appear at the continued status conference as required by LBR 7016-1(a)(1). The court noted on the record that GMAC had not appeared nor filed a status report prior to the continued status conference, and that according to the docket there had been no activity in the adversary proceeding since the preceding status conference. The court dismissed the adversary proceeding at the status conference pursuant to LBR 7016-1(f)(3) & (g).[3] The Order was entered on August 25, 2011.

On August 30, 2011, GMAC filed a Motion for an Order Setting Aside Order Dismissing Adversary Proceeding ("Motion"). GMAC seeks relief from the Order pursuant to Rule 60(b)(1) alleging excusable neglect. Specifically, GMAC states:

> This Court dismissed GMAC's adversary proceeding due to a lack of prosecution and the failure to [sic] GMAC to appear at the status conference. As will be explained below, the lack of prosecution was justified by efforts to resolve this case through a search for the missing vehicle that caused the adversary proceeding. The failure to appear at the status conference was due to a calendaring error by GMAC's counsel. As this was [sic] failure was due to excusable neglect, and as this Court never indicated that it was about to dismiss the case for lack of prosecution, the Court should set aside the order dismissing the adversary proceeding.[4]

GMAC gave 14-days notice of an opportunity to request a hearing on the motion pursuant to

---

[3] LBR 7016-1(f)(3) states, in pertinent part: "In addition to the sanctions authorized by F.R.Civ.P. 16(f), if a status conference statement . . . is not filed within the times set forth in subsections (a) . . . of this rule, the court may order . . .[a]n award of non-monetary sanctions . . . . Non-monetary sanctions may include the entry of a judgment of dismissal . . . .

LBR 7016-1(g) further states, in pertinent part: "The failure of a party's counsel . . . to appear before the court at the status conference . . . , or to complete the necessary preparations therefor, . . . may be considered an abandonment or failure to prosecute or defend diligently, and judgment may be entered against the defaulting party either with respect to a specific issue or as to the entire proceeding, or the proceeding may be dismissed."

[4] Motion, 3:3-9.

-4-

1  LBR 9013-1(o). On September 21, 2011, GMAC filed a Declaration Re: Entry of Order Without Hearing Pursuant to LBR 9013-1(o) stating that it has received no opposition to the motion and requesting that the relief sought in the motion be granted without a hearing.

## II. DISCUSSION

Reconsideration of an order in a bankruptcy case may be sought under either FRBP 9023 or 9024, which incorporate F.R.Civ.P. 59(e) and 60(b), respectively. See Fuller v. M.G. Jewelry, 950 F.2d 1437, 1442 (9th Cir. 1991).[5] Rule 60(b)(1) authorizes court to grant a party relief from an order based on evidence of "mistake, inadvertence, surprise, or excusable neglect." F.R.Civ.P. 60(b)(1). GMAC correctly observes that "[t]he determination of whether neglect is excusable is an equitable one, taking into account all relevant circumstances surrounding the

---

[5] When the motion is filed within 14 days of entry of the final order, it should be treated as a Rule 59(e) motion to alter or amend judgment. See Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp., 248 F.3d 892, 898-99 (9th Cir. 2001) (construing former Rule 59(e) in which the deadline to file a reconsideration motion was 10 days from entry of the order).

Reconsideration under Rule 59(e) is "an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" Carroll v. Nakatani, 342 F.3d 934, 945 (9th Cir. 2003) (citation omitted); Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted). In the Ninth Circuit, "'a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.'" Kona Enters., 229 F.3d at 890 (quoting 389 Orange Street Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999)). Reconsideration may also be granted "as necessary to prevent manifest injustice." Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003).

In this case, the Order was entered on August 25, 2011. GMAC's motion was filed on August 28, 2011 – within 14 days of entry of the Judgment. Although timely, GMAC's motion would be denied under Rule 59(e) because the motion and supporting declaration do not establish a prima facie case for relief under Rule 59(e). GMAC's motion does not allege newly discovered evidence nor an intervening change in controlling law. Nor do GMAC's papers establish that the court committed clear error in dismissing the adversary proceeding or that reconsideration is necessary to prevent manifest injustice.

party's omission."[6] The Supreme Court enunciated the standard for determining "excusable neglect" in Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship., 507 U.S. 380 (1993).[7]

---

[6] Motion, 6:26-27

[7] In Pioneer, Brunswick Associates, Ltd., Clinton Associates Limited Partnership, Ft. Oglethorpe Associates Limited Partnership, and West Knoxville Limited Partnership (collectively, "Brunswick"), creditors of Pioneer Investment Services Company ("Pioneer"), received a "Notice for Meeting of Creditors" in Pioneer's chapter 11 bankruptcy setting a creditors' meeting for May 5, 1989. The notice also contained a bar date of August 3, 1989, to file proofs of claim in the case. Brunswick retained Marc Richards ("Richards") to represent them in the bankruptcy, and Brunswick delivered to Richards the notice and a file containing all pertinent documents regarding their claims at least two months prior to the claims deadline. Brunswick also specifically asked Richards whether there was a deadline to file claims, to which Richards incorrectly responded that no such date had been set by the court.

On August 23, 1989, Brunswick filed their proofs of claim together with a motion under Rule 9006(b)(1) seeking a 20-day enlargement of the deadline to file claims on the ground of excusable neglect. FRBP 9006(b)(1). In support of the motion, Richards claimed that he did not have access to his file and was unaware of the bar date because the deadline "came at a time when he was experiencing 'a major and significant disruption' in his professional life caused by his withdrawal from his former law firm on July 31, 1989." Id. at 384. The bankruptcy court denied Brunswick's motion, finding that Richards had actual notice of the claims deadline and that the reason for the delay was not outside his control. Id. at 385-86. The bankruptcy court further found that Richards was negligent in failing to file the proofs of claim prior to the bar date, stating that Richards' "actions indicated an indifference to the bar date and the orders of the court." Brunswick Assocs. Ltd. P'ship. v. Pioneer Inv. Servs. Co. (In re Pioneer Inv. Servs. Co.), 943 F.2d 673, 677 (6th Cir. 1991), aff'd, 507 U.S. 380 (1993). The district court affirmed. Pioneer, 507 U.S. at 386.

The Court of Appeals for the Sixth Circuit reversed and remanded, holding that the record supported a finding of excusable neglect. In so holding, the Sixth Circuit found "it significant that the notice containing the bar date was incorporated in a document entitled 'Notice for Meeting of Creditors'," and that creditors had not been given a specific notice of the claims deadline on Form 16. Brunswick Assocs., 943 F.2d at 678. The Sixth Circuit stated:

> While we do not suggest that the court was obligated to notify creditors in precisely this form, the comparison between this Form 16 notice and the notice actually given in this case suggests the <u>dramatic ambiguity</u> of the latter. This ambiguity is exacerbated by the fact that the notice was simply and inconspicuously labeled "Bar date" without any reference to its significance as a deadline for the filing of proof of claims. Even persons experienced in bankruptcy might confuse such a label for other deadlines.

- 6 -

The Court explained that the issue of whether admitted neglect can be excused is an equitable determination that incorporates all relevant factors, including (1) danger of prejudice to the non-movant; (2) length of delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. Id. at 395. However, the Supreme Court reiterated in Pioneer that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." Id. at 392. The Court also clarified that clients must be "held accountable for the acts and omissions of their chosen counsel." Id. at 396.

Following Pioneer, the Ninth Circuit in Pincay v. Andrews, 389 F.3d 853 (9th Cir. 2004) (en banc), cert. denied, 544 U.S. 961 (2005), ruled that an attorney's culpable conduct is not "per se" inexcusable, noting that "[a]ny rationale suggesting that misinterpretation of an unambiguous rule can never be excusable neglect" is inconsistent with Pioneer. Id. at 859. In Pincay, an attorney who had negligently delegated to a paralegal the responsibility for properly calculating and calendaring an appeal deadline, failed to timely file a notice of appeal and filed a motion

---

Id. (emphasis added).

The Supreme Court affirmed, holding that a finding of "excusable neglect" was "not limited strictly to omissions caused by circumstances beyond the control of the movant," but was an "elastic concept" that included, in appropriate circumstances, errors resulting from negligence, including inadvertence, mistake or carelessness. Pioneer, 507 U.S. at 392. In reaching its conclusion in Pioneer, the Supreme Court gave "little weight" to Richards' excuse that he was "experiencing upheaval in his law practice at the time of the bar date." Id. at 398. The Court, like the Sixth Circuit, focused on the ambiguous form of the bar date notice, coupled with the lack of any evidence of bad faith, prejudice to the debtor, or delay in the judicial administration of the case, stating that:

> "the 'peculiar and inconspicuous placement of the bar date in a notice regarding a creditors['] meeting,' without any indication of the significance of the bar date, left a 'dramatic ambiguity' in the notification."

Id. at 398.

seeking an extension of time. Counsel described the reason for the delay as "the failure of a 'carefully designed' calendaring system operated by experienced paralegals that heretofore had worked flawlessly." Id. The district court found excusable neglect and granted the motion. Id. at 855-56. The Ninth Circuit ultimately affirmed, holding that the district court did not abuse its discretion in finding excusable neglect and permitting the filing of the notice of appeal based upon its application of the Pioneer factors. Id. at 860. Pincay stands for the proposition that a trial court has wide discretion in weighing and applying the nonexclusive Pioneer factors and in deciding whether to excuse the "lapse." Id. at 859.

Pioneer requires that the issue of excusable neglect be determined in the context of the particular case. Pincay, 389 F.3d at 859 (stating that the "question is whether there [is] enough in the context of [the] case to bring a determination of excusable neglect within the . . . court's discretion"). The burden of presenting facts demonstrating excusable neglect is on the movant. Key Bar Investments, Inc. v. Cahn (In re Cahn), 188 B.R. 627, 631 (9th Cir. BAP 1995); In re Pac. Gas & Elec. Co., 311 B.R. 84, 89 (Bankr. N.D. Cal. 2004). Because Pioneer's four factors are non-exclusive, the court is permitted to take "account of all relevant circumstances surrounding the party's omission" in making an equitable determination. Pioneer, 507 U.S. at 395. Pioneer mandated a balancing test for divining excusable neglect, but Pioneer did not assign the weight to be accorded by the court to each of its non-exclusive factors in making an equitable determination. See Pincay, 389 F.3d at 860 (stating that "we leave the weighing of Pioneer's equitable factors to the discretion of the . . . court in every case"); Lowry v. McDonnell Douglas Corp., 211 F.3d 457, 463 (8th Cir. 2000) (stating that "[t]he four Pioneer factors do not carry equal weight"), cert. denied, 531 U.S. 929 (2000).

A. Danger of Prejudice to the Non-moving Party.

Citing Nealey v. Transportacion Maritima Mexicana, S.A., 662 F.2d 1275, 1281 (9th Cir. 1980), GMAC argues that the Debtor will not be prejudiced because "neither loss of evidence

nor loss of memory by a witness prejudices [the Debtor]."[8] The court notes that <u>Nealey</u> preceded the Supreme Court's decision in <u>Pioneer</u>. But even <u>Nealey</u> acknowledges, consistent with <u>Pioneer</u>, that "neither delay nor prejudice can be viewed in isolation." <u>Id.</u> at 1280.

One year has passed since the Debtor filed her bankruptcy petition. According to the docket, Debtor filed all requisite schedules, statements, documents and certificates, cooperated with the trustee, attended her creditors' meeting, and received a discharge. Debtor's case was closed 7 months ago. The only remaining impediment preventing Debtor from enjoying the fresh start earned upon her discharge in bankruptcy was the pending adversary proceeding filed by GMAC. Objections to the nondischargeability of debts are strictly construed against the objecting party and liberally construed in favor of the debtor. <u>Quarre v. Saylor (In re Saylor)</u>, 108 F.3d 219, 221 (9th Cir. 1997). Expeditious adjudication of such objections promotes the fresh start policy of the Code.

Having filed a complaint alleging that its claim against the Debtor was nondischargeable under § 523(a)(2) and (6), GMAC had the responsibility to diligently pursue its causes of action to judgment. Instead, GMAC did not prosecute its claims admitting both in the Motion and previously in open court that it "would prefer to have the vehicle rather than a judgment against a pro per Debtor with limited income."[9] GMAC's lien on the subject vehicle survived the Debtor's discharge and the closing of Debtor's bankruptcy case. GMAC has the right to take immediate possession of the vehicle, to foreclose its lien, and to apply the proceeds to the remaining amount due on the contract. GMAC does not need this adversary proceeding to exercise those rights. In the court's view, GMAC's failure to diligently prosecute its claims was prejudicial to the

---

[8] Motion, 7:16-17.

[9] Motion, 5:15-16.

-9-

1  Debtor's fresh start.[10] Therefore, this factor weighs in favor of the unrepresented Debtor.

2  B. **Length of the Delay and its Potential Impact on Judicial Proceedings.**

3  The Order was entered on August 25, 2011, and the Motion was filed on August 30,

4  2011. The Motion was timely. The delay was not significant and GMAC's action in seeking

5  relief from the Order does not, in and of itself, adversely affect judicial proceedings.

6  C. **Reason for the Delay, Including Whether it was Within the Reasonable Contro of the Movant.**

7  Of the four factors, the reason for the delay is preeminent. See United States v. Torres,

8  372 F.3d 1159, 1163 (10th Cir. 2004) ("fault in the delay remains a very important factor –

9  perhaps the most important single factor – in determining whether neglect is excusable.")

10  (quoting City of Chanute v. Williams Natural Gas Co., 31 F.3d 1041, 1046 (10th Cir. 1994));

11  Graphic Commc'ns Int'l Union v. Quebecor Printing Providence, Inc., 270 F.3d 1, 5 (1st Cir.

12  2001) ("We have observed that the four Pioneer factors do not carry equal weight; the excuse

13  given for the late filing must have the greatest import.) (internal quotation marks and bracket

14  omitted).

15  It is undisputed that GMAC failed to file a status report with the court prior to the August

16  23rd status conference as required by LBR 7016-1(a)(2), and then failed to attend the August

17  23rd status conference as required by LBR 7016-1(a)(1). GMAC's repeated violation of LBR

18  7016-1(a)(2), by failing to file a status report with the court not later than 14 days prior to each

19  status conference, coupled with its failure to attend the status conference in violation of LBR

---

[10] GMAC also contends that Debtor has "conceded liability" by failing to answer or respond to GMAC's complaint. Motion, 7:19-20. However, GMAC did not request an entry of default. Only an entry of default cuts off the defendant's right to appear in the action or to present evidence. Cohen v. Murphy, 2004 WL 2779942 (N.D. Cal. 2004); see In re Uranium Antitrust Litigation, 473 F.Supp. 382, 386 (N.D. Ill. 1979) (stating that "the defaulting defendant loses his standing to defend on the merits"). More importantly, GMAC had the burden to establish the nondischargeability of its debt notwithstanding the Debtor's failure to file an answer. See All Points Capital Corp. v. Meyer (In re Meyer), 373 B.R. 84, 88 (9th Cir. BAP 2007) ("[I]t is black-letter law that entry of default does not entitle a plaintiff to a judgment as a matter of right or as a matter of law."). GMAC did not prosecute its claims.

- 10 -

7016-1(a)(1), was grounds for dismissal of the adversary proceeding under LBR 7016-1(f)(3) & (g). GMAC's counsel argues that his failure to do so was excusable.

      GMAC's counsel admits that his culpability was the sole reason for the delay and that the delay was squarely within his control.[11] GMAC's counsel did not miss the deadlines due to ill health or disability, a delay in the mail, a miscommunication or failure to communicate with his client, a misguided instruction from a court clerk or judicial officer, or a "dramatic ambiguity" between relevant procedural rules. Nor was GMAC's counsel the unwitting victim of an aberration in an otherwise fail-safe calendaring system, as in Pincay. "While a court 'may properly find excusable neglect [where the language of a rule is ambiguous or susceptible to multiple interpretations or where an apparent conflict exists between two rules], . . . [the] failure to follow the clear dictates of a court rule will generally not constitute such excusable neglect.'" Ceridian Corp. v. SCSC Corp., 212 F.3d 398, 404 (8th Cir. 2000) (quoting Canfield v. Van Atta Buick/GMC Truck, Inc., 127 F.3d 248, 250 (2d Cir. 1997), cert. denied, 522 U.S. 1117 (1998)).

      Furthermore, the court explained to GMAC's counsel at the May 24th status conference that it expected the case to be prosecuted diligently and continued the status conference to August 23, 2011, to "give [GMAC] 60 days to seek entry of default and once that's done, and the matter has yet to be settled, to file a motion for default judgment." GMAC's counsel stated on the record at the May 24th status conference that he "understood" the court's instructions, as well as the date and time of the continued status conference on August 23, 2011. The 60-day period following the May 24th status conference expired on or about July 25, 2011. GMAC did not request entry of default, as instructed by the court. Nor did GMAC file a motion for default judgment. Stalled settlement talks do not excuse counsel's inattention to the adversary proceeding. See In re Enron Corp., 419 F.3d 115, 126 (2d Cir. 2005) (creditor's failure to timely

---

[11] "Unfortunately, due to a calendaring error on my part, the continued status conference was not calendared." Declaration of Bernard J. Kornberg, 3:12-13. "The failure to file a joint status report or to appear at the status conference is due to a calendaring error by me." Id. at 4:16-17.

- 11 -

file a proof of claim "solely from inadvertence" because its counsel was heavily focused on negotiations with debtor's subsidiary was not excusable neglect of the type sufficient to justify extending the claims bar deadline) (emphasis added). Counsel's admission that he was "planning to submit a request for entry of default the very day the Court dismissed this matter" indicates that the court's instructions on May 24th were understood then ignored.[12] Therefore, the court weighs this <u>Pioneer</u> factor heavily in favor of the Debtor.

D. Good Faith.

There is no reason to attribute any bad faith or gamesmanship to the actions of GMAC or its counsel in making the Motion.

### III. CONCLUSION

"The bankruptcy court has broad discretion to apply its local rules strictly or to overlook any transgressions." <u>Nunez v. Nunez (In re Nunez)</u>, 196 B.R. 150, 157 (9th Cir. BAP 1996); <u>see</u> <u>Miranda v. S. Pac. Transp. Co.</u>, 710 F.2d 516, 521 (9th Cir. 1983) ("District courts have broad discretion in interpreting and applying their local rules."). The failure to adhere to a court's local rules is grounds for dismissal. <u>Ghazali v. Moran</u>, 46 F.3d 52, 53 (9th Cir. 1995). While two factors tip in favor of GMAC, the court balances the totality of the <u>Pioneer</u> factors in favor of the Debtor and finds that GMAC has not discharged its burden to establish that its failure to file a status conference report, to appear at the status conference, and to diligently prosecute the adversary proceeding was the result of excusable neglect. Accordingly, GMAC's Motion is denied.

The court will enter a separate order consistent with this opinion.

Dated: September 30, 2011

PETER H. CARROLL
United States Bankruptcy Judge

---

[12] Declaration of Bernard J. Kornberg, 4:17-18.

| In re: | CHAPTER: |
|---|---|
| Debtor(s). | CASE NUMBER: |

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify* __**MEMORANDUM DECISION**__ was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of _9-30-2011_, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

- Bernard J Kornberg    bjk@severson.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

Marquita Helen McClaren
2171 West 30th St.
Los Angeles, CA 90018

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009    F 9021-1.1